23 Cal.Rptr.3d 406 (2005)
125 Cal.App.4th 1324
Patrick O'MEARA, Plaintiff and Respondent,
v.
PALOMAR-POMERADO HEALTH SYSTEM et al., Defendants and Appellants.
No. D043099.
Court of Appeal, Fourth District, Division 1.
January 21, 2005.
Review Granted April 27, 2005.
*408 DiCaro, Coppo & Popcke, Carlo Coppo and Michael R. Popcke, San Diego, for Defendants and Appellants.
Tosdal, Levine, Smith & Steiner, Thomas Tosdal and Christina Giorgio for Plaintiffs and Respondents.
*407 HALLER, J.
Dr. Patrick O'Meara, the former chair of the Department of Orthopedic Surgery at Palomar Medical Center (Palomar), sued Palomar and related entities, and various individuals on Palomar's medical peer review committees, alleging defendants improperly retaliated against Dr. O'Meara because he expressed dissatisfaction with a managed care entity's involvement in medical decisions. After this court reversed a prior judgment granting defendants' demurrer, defendants brought a motion to strike the complaint under California's anti-SLAPP law. (Code Civ. Proc.,[1] § 425.16.) The superior court found the anti-SLAPP statute governed the complaint, but that Dr. O'Meara met his burden to show a probability of prevailing on his claims. The superior court thus denied the anti-SLAPP motion.
*409 Defendants appeal. We affirm, although on grounds different from the superior court. The causes of action alleged in Dr. O'Meara's complaint do not arise from defendants' acts in furtherance of their free speech or free petition rights, as that phrase is defined in the anti-SLAPP statute, and therefore Dr. O'Meara's claims are not subject to a section 425.16 motion to strike. In so holding, we reject defendants' contentions that proceedings by a hospital peer review committee constitute an "official proceeding" under section 425.16, subdivision (e)(2), and that defendants' alleged wrongful conduct was connected to a public issue or an issue of public interest under section 425.16, subdivision (e)(4). We therefore do not reach the issue whether it is probable that Dr. O'Meara will prevail on his claims.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
Although this case has accumulated a complex procedural history, most of this history is not relevant to the issues in this appeal. We thus limit our factual and procedural summary to those facts necessary to resolving the appellate issues before us.
In the operative complaint, Dr. O'Meara alleges one of his patients received substandard medical treatment at Palomar because the hospital, and/or a third party entity (Graybill Medical Group, Inc.) with which Palomar has a contractual relationship, refused to approve Dr. O'Meara's decision to transfer his patient to another hospital for medically necessary care. The refusal to approve the transfer was allegedly based on financial considerations related to managed care insurance. Dr. O'Meara "protested" this interference with his medical decisions to Palomar's chief executive officer and to Palomar's Executive Committee, the hospital's peer review body.
The Executive Committee (and various ad hoc committees of this body) then allegedly took a number of retaliatory steps against Dr. O'Meara, including: (1) placing Dr. O'Meara on probation status in February 2000; (2) requesting Dr. O'Meara's attendance at an anger management course; (3) extending Dr. O'Meara's probation status in April 2001; and (4) placing a critical letter in Dr. O'Meara's credentials file. Dr. O'Meara alleged the investigation leading to these actions was conducted in an "unbalanced, biased and grossly inadequate" manner, and that he was not provided with a judicial or quasi-judicial hearing. Dr. O'Meara also alleged that Palomar officials and the Executive Committee members made false, unprivileged and defamatory statements to third persons about Dr. O'Meara's conduct and the disciplinary actions.
Based on these allegations, Dr. O'Meara's amended complaint asserts numerous causes of action, including constitutional violations, statutory violations (see, e.g., Bus. & Prof.Code, § 2056 [prohibiting retaliation against physicians who advocate for medically appropriate health care for their patients]), and various common law torts, including defamation, negligence, intentional infliction of emotional distress, and intentional interference with prospective economic relations. The defendants named in the complaint include: Palomar, Palomar's governing hospital district (Palomar-Pomerado Health System), Palomar's chief operating officer (Victoria Penland), and several individual members of Palomar's peer review committee (known as the Executive Committee).
In moving to strike this complaint under the anti-SLAPP law, defendants argued that Dr. O'Meara's causes of action arose from defendants' exercise of free speech *410 on matters of public interest and/or in connection with an official proceeding. Defendants claimed their alleged wrongful conduct arose from Palomar's peer review process, which constitutes an "official proceeding" because it is required under state law. (§ 425.16, subd. (e)(2).) Defendants additionally argued that Dr. O'Meara's claims concern a matter of "public interest" because "the peer review process is the primary mechanism by which the quality of medical care rendered to patients in California hospitals is assured." In support of these arguments, defendants relied solely on Dr. O'Meara's pleadings.
In response, Dr. O'Meara argued the anti-SLAPP statute was inapplicable because his allegations did not concern defendants' statements made in connection with an "official proceeding" or conduct in connection with a "public issue" or an "issue of public interest." Dr. O'Meara alternatively argued that even assuming the anti-SLAPP statute applied, the court should deny the motion because it was probable he would prevail on his claims. In support of this argument, Dr. O'Meara submitted his own declaration, deposition transcripts, and numerous other documents containing evidence pertaining to each of his causes of action.
In reply, defendants maintained that Dr. O'Meara failed to meet his burden to show a probability of prevailing because the evidence showed his claims were barred by Dr. O'Meara's failure to exhaust his judicial and/or administrative remedies. Defendants proffered records relating to the imposition of discipline and a copy of Palomar's governing medical bylaws. This evidence showed the Executive Committee's stated purpose for imposing the discipline was Dr. O'Meara's "inappropriate and unethical comments" to patients' families about another physician.
The superior court found the anti-SLAPP statute applied to Dr. O'Meara's claims under section 425.16, subdivisions (e)(2) and (e)(4). The court stated that because Dr. O'Meara's action is based on a peer review process, "the allegations qualify as being `connected with' an official proceeding authorized by law ...." (§ 425.16, subd. (e)(2).) The court further found that Dr. O'Meara's complaint involved protected conduct under section 425.16, subdivision (e)(4) because "Dr. O'Meara's allegations involve whether [the] profit motive of `managed care' entities undermines patient care" and thus are "most certainly an issue of public interest." But the court found that Dr. O'Meara satisfied his burden to establish he would prevail on the merits of his claims, including showing that the exhaustion of remedies doctrine did not bar his claims. The court thus denied defendants' motion to strike.

DISCUSSION

I. Summary of Applicable Anti-SLAPP Law

Under section 425.16, a cause of action is subject to a defendant's special motion to strike if the claim arises "from any act ... in furtherance" of the defendant's "right of petition or free speech under the United States or California Constitution in connection with a public issue...." (§ 425.16, subd. (b)(1); see Gallimore v. State Farm Fire & Casualty Ins. Co. (2002) 102 Cal.App.4th 1388, 1396, 126 Cal.Rptr.2d 560.) The statute identifies four categories of activities that are "`in furtherance of'" a defendant's free speech or free petition rights. (§ 425.16, subd. (e).) The first two categories pertain to a defendant's statements or writings made before, or in connection with, a "legislative, executive, or judicial body, or any other official proceeding...." (§ 425.16, subd. (e)(1), *411 (2).) The third category is "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) The fourth category is "any other conduct in furtherance of the exercise of the constitutional right of petition or ... free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) When the defendant's alleged acts fall under the first two categories, the defendant is not required to independently demonstrate that the matter is a "public issue" within the statute's meaning. (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1113-1123, 81 Cal.Rptr.2d 471, 969 P.2d 564 (Briggs).) But if the defendant's alleged acts fall under the third or fourth categories, the defendant must show the statements and/or conduct concern a "public issue" or an "issue of public interest." (Ibid.; see § 425.16, subd. (e)(3), (4).)
Whether section 425.16 applies to a particular complaint presents a legal question subject to a de novo review on appeal. (Kashian v. Harriman (2002) 98 Cal.App.4th 892, 906, 120 Cal.Rptr.2d 576.) Thus, if the lower court's decision is correct on any theory of law applicable to the case, we must affirm the order regardless of the correctness of the grounds upon which the lower court reached its conclusion. (See Mike Davidov Co. v. Issod (2000) 78 Cal.App.4th 597, 610, 92 Cal.Rptr.2d 897.)

II. Analysis

In ruling on an anti-SLAPP motion, a court must first determine whether the defendant met its burden to show the challenged cause of action is one arising from the defendant's activity protected under the anti-SLAPP statute. (Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507, 52 P.3d 685; Navellier v. Sletten (2002) 29 Cal.4th 82, 88-89, 124 Cal.Rptr.2d 530, 52 P.3d 703.) In this case, defendants argued that Dr. O'Meara's claims arose from protected activity because the claims concerned (1) defendants' statements made about disciplinary matters before an "official proceeding" (the Executive Committee) (§ 425.16, subd. (e)(2)); and (2) defendants' conduct in furtherance of free speech involving a public issue (managed health care arrangements) (§ 425.16, subd. (e)(4)). As explained below, neither of these grounds support the application of the anti-SLAPP statute in this case.

A. Defendants' Alleged Wrongful Statements About Executive Committee's Discipline

Under section 425.16, subdivision (e)(2), the anti-SLAPP statute applies to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (Italics added.) Defendants contend Dr. O'Meara's claims that defendants made false statements about the Executive Committee's disciplinary proceedings fall within this subdivision because the Executive Committee is an "official proceeding authorized by law." This contention is without merit.
Palomar's Executive Committee is a legally mandated hospital peer review organization established under Palomar's medical staff bylaws. (See Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 10-12, 56 Cal.Rptr.2d 706, 923 P.2d 1.) The Executive Committee acts on behalf of Palomar's medical staff and, as with all California hospital peer review bodies, is charged with adopting rules for appropriate hospital *412 practices and procedures, evaluating physicians applying for staff privileges, establishing standards and procedures for patient care, assessing the performance of staff physicians, reviewing performed surgeries, and investigating a complaint or incident involving a staff physician. (See Fox v. Kramer (2000) 22 Cal.4th 531, 538, 93 Cal.Rptr.2d 497, 994 P.2d 343; Arnett v. Dal Cielo, supra, 14 Cal.4th at pp. 10-11, 56 Cal.Rptr.2d 706, 923 P.2d 1.)
Although these functions serve important public purposes of improving patient care and ensuring quality health services (see Bus. & Prof.Code, § 809, subd. (a)), the California Supreme Court has recognized that a hospital peer review committee differs from a governmental agency in several fundamental ways. (Arnett v. Dal Cielo, supra, 14 Cal.4th at p. 12, 56 Cal.Rptr.2d 706, 923 P.2d 1.) "First, [a hospital peer review committee] is not a public agency created and funded by the state, but a group of private physicians selected by and from the staff of a hospital. Second, the conduct of the errant physician is not reviewed by independent, professional investigators, but by the physician's own colleagues practicing in the same hospital: it is, by definition, a peer review committee. By weeding out incompetent or impaired staff physicians, therefore, the peer review processin addition to its public protection functioninevitably also serves the private purpose of reducing the exposure of the hospital to potential tort liability. Third, the `public' protected by the peer review process is not the public at large, but is limited to the patients of the particular hospital in question. The process is institution specific: a physician stripped of staff privileges by one hospital is not ipso facto prevented from obtaining or maintaining such privileges at other hospitalsthe only entity with the power to prevent that from happening is the [state medical board]." (Ibid., italics in original, fn. omitted.)
Based on these essentially private functions of a hospital peer review body and the legislative background of the anti-SLAPP statute, we conclude the Executive Committee's proceedings in this case cannot be fairly viewed as "official" under the anti-SLAPP statute. In 1979, the California Supreme Court addressed the issue whether a peer review proceeding conducted by a private medical society was an "`official proceeding authorized by law'" under a former version of the litigation privilege statute, Civil Code section 47. (Hackethal v. Weissbein, (1979) 24 Cal.3d 55, 58-61, 154 Cal.Rptr. 423, 592 P.2d 1175.) At the time, Civil Code section 47, subdivision (2) provided for an absolute privilege for publications made "`in any (1) legislative, or (2) judicial proceeding, or (3) in any other official proceeding authorized by law....'" (Hackethal v. Weissbein, supra, 24 Cal.3d at p. 57, fn. 1, 154 Cal.Rptr. 423, 592 P.2d 1175, italics added.) Interpreting this former statute, the Hackethal court held that a peer review proceeding was not an "`official proceeding'" because a peer review committee was not a governmental body. (Id. at pp. 58-60, 154 Cal.Rptr. 423, 592 P.2d 1175.) The Hackethal court "explicitly rejected the contention that merely because state law required the creation of a review committee, every body so created was `official.'" (Cuenca v. Safeway San Francisco Employees Fed. Credit Union (1986) 180 Cal.App.3d 985, 994, 225 Cal.Rptr. 852.) The court reasoned that the word "official" before the word "proceeding" was intended to preclude the application of the privilege in "nongovernment proceedings." (Hackethal v. Weissbein, supra, at p. 60, 154 Cal.Rptr. 423, 592 P.2d 1175.)
Shortly thereafter, the Legislature amended Civil Code section 47 with the *413 intent "effectively to overrule the Hackethal decision," by adding a new subsection, which extends the privilege to "`any other proceeding authorized by law and reviewable [by an administrative writ of mandate]....'" (Moore v. Conliffe (1994) 7 Cal.4th 634, 652-653, 29 Cal.Rptr.2d 152, 871 P.2d 204.) The language of that amendment is now included in the statute as Civil Code section 47, subdivision (b)'s fourth category, in addition to the "legislative," "judicial," and "official proceeding" categories. (Civ.Code, § 47, subd. (b).)[2] As the Moore court explained, "by its immediate unanimous response to Hackethal," the Legislature intended to make clear that the statutory litigation privilege "should not be confined narrowly only to witnesses who testify in peer review proceedings conducted by governmental agencies, but rather should apply also to witnesses who testify in analogous peer review proceedings conducted by private entities...." (Moore v. Conliffe, supra, 7 Cal.4th at p. 653, 29 Cal.Rptr.2d 152, 871 P.2d 204.)[3]
Approximately 13 years later, the Legislature enacted the anti-SLAPP statute, (Stats.1992, § 2, ch. 726, p. 3523), and in referring to the type of speech/petitioning activities that are covered by the statute, the Legislature used some of the same language used in the amended version of Civil Code section 47, subdivision (b)  providing that the anti-SLAPP statute applies to statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subds. (e)(1) & (e)(2), italics added.) The Legislature, however, did not add the additional clause that was contained in the amended version of Civil Code section 47, subdivision (b)(2): "or ... in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [an administrative writ of mandate]...." (Italics added.)
Based on this omission, we necessarily infer the Legislature did not intend to include proceedings of a nongovernmental body, such as a hospital peer review committee, in the definition of an "official proceeding" within the meaning of section 425.16, subdivisions (e)(1) and (e)(2). The Legislature is presumed to be aware of existing law and judicial decisions interpreting the law. (See People v. Cruz (1996) 13 Cal.4th 764, 775, 55 Cal.Rptr.2d 117, 919 P.2d 731.) The Legislature was thus presumably aware that the California Supreme Court had previously interpreted the "official proceeding" clause in Civil Code section 47 to include only governmental proceedings, and the Legislature knew precisely how to write a statute to extend this coverage to nongovernmental proceedings (category 4 of the amended version of Civil Code section 47, subdivision (b)). Given Hackethal and the legislative history of Civil Code section 47, if the Legislature had intended to include private self-governing entities such as medical peer review committees, it would have included in the anti-SLAPP statute the final clause from Civil Code section 47, subdivision (b) (or "any other proceeding authorized *414 by law and reviewable pursuant to [an administrative writ of mandate"].)
This conclusion is further supported by the analysis in Briggs, supra, 19 Cal.4th 1106, 81 Cal.Rptr.2d 471, 969 P.2d 564, where the high court construed section 425.16, subdivisions (e)(1) and (e)(2) as not imposing a separate "public issue" requirement. The Briggs court found the Legislature evinced an intent that the statute "protect all direct petitioning of governmental bodies (including, as relevant here, courts and administrative agencies) and petition-related statements and writing." (Id. at p. 1121, 81 Cal.Rptr.2d 471, 969 P.2d 564, italics added.) The court thus explained that by "effectively deeming statements and writings made before or connected with issues being considered by any official proceeding to have public significance per se, the Legislature afforded trial courts a reasonable, bright-line test applicable to a large class of potential section 425.16 motions." (Id. at p. 1122, 81 Cal.Rptr.2d 471, 969 P.2d 564.) These comments support the conclusion that the purpose of section 425.16, subdivisions (e)(1) and (e)(2) was to establish a bright-line test for matters that necessarily meet the test of public significance, i.e., those before a governmental body. This purpose would be undermined if section 425.16, subdivisions (e)(1) and (e)(2) were extended to include proceedings by private entities merely because those proceedings were legally "authorized."
In arguing that section 425.16, subdivision (e)(2) applies here, defendants do not cite any decision applying section 425.16, subdivisions (e)(1) and (e)(2) to proceedings held by a peer review committee or any other similar type of private association. Defendants instead rely on the laws authorizing  and indeed mandating  peer review proceedings at hospitals to argue that the peer review proceedings here were "authorized by law." (See Fox v. Kramer, supra, 22 Cal.4th at p. 538, 93 Cal.Rptr.2d 497, 994 P.2d 343; Arnett v. Dal Cielo, supra, 14 Cal.4th at p. 10, 56 Cal.Rptr.2d 706, 923 P.2d 1.) These laws are of no help to defendants on the issue before us. Although medical peer review committees are authorized by law, section 425.16, subdivision (e)(2) is nevertheless inapplicable because the medical peer review proceedings in this case were not "official proceedings" under the anti-SLAPP statute. Moreover, our conclusion is unaffected by the fact that one of the defendants  Palomar-Pomerado Health System  is a public entity in the sense that it is a hospital district created by statute. (See Health & Saf.Code, § 32000, et seq.) Because the factual basis of defendants' "official proceeding" claim is Palomar's peer review proceedings, and not the structure, ownership, or proceedings of the affected hospital, the ownership status of Palomar Medical Center is not material on this issue.

B. Acts of Imposing Discipline

Defendants alternatively contend that Dr. O'Meara's claims trigger anti-SLAPP protection because they are based on defendants' alleged wrongful conduct in imposing discipline and conducting a negligent investigation. Section 425.16, subdivision (e)(4) is the only subsection of the anti-SLAPP statute that concerns a defendant's conduct, as opposed to a defendant's written or oral statements. To come within section 425.16, subdivision (e)(4), a defendant must show: (1) the defendant's conduct was in furtherance of the defendant's free speech or free petition rights; and (2) this conduct occurred "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4), italics added.) Defendants did not satisfy their burden on either of these elements.
*415 First, defendants' actions in imposing discipline did not involve an exercise of their free speech or petition rights. Because defendants were the parties responsible for conducting the investigation and imposing any appropriate discipline, they were not exercising any form of a "petition" right in this disciplinary matter. Defendants' disciplinary actions likewise did not constitute an exercise of their free speech rights. Although business and governmental representatives do have free speech rights even when speaking in their official capacities (see Bradbury v. Superior Court (1996) 49 Cal.App.4th 1108, 57 Cal.Rptr.2d 207), our focus is on defendants' alleged wrongful conduct. Defendants do not cite any authority supporting the proposition that a business or government entity has a constitutional right to make or enforce employee disciplinary rules. We decline defendants' invitation that we extend free speech constitutional protection to include this type of conduct.
Moreover, even assuming defendants' conduct in this case could be fairly viewed as actions in furtherance of their constitutional rights, this conduct did not occur in connection with a "public issue" or an "issue of public interest." (§ 425.16, subd. (e)(4).) As noted, Dr. O'Meara's challenged discipline was imposed by a hospital peer review committee composed of Dr. O'Meara's colleagues and hospital officials. Although the definition of public interest within the meaning of the anti-SLAPP statute has been broadly construed to include conduct between private actors such as these parties, it is now well settled that to constitute a public issue, this type of conduct must either "impact[] a broad segment of society" or "affect[ ] a community in a manner similar to that of a governmental entity." (Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 479, 102 Cal.Rptr.2d 205; accord Du Charme v. International Brotherhood of Electrical Workers (2003) 110 Cal.App.4th 107, 115-119, 1 Cal.Rptr.3d 501; Commonwealth Energy Corp. v. Investor Data Exchange, Inc. (2003) 110 Cal.App.4th 26, 32-35, 1 Cal.Rptr.3d 390; Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO (2003) 105 Cal.App.4th 913, 923, 130 Cal.Rptr.2d 81.)
Under these authorities, a private workplace dispute such as occurred here does not concern a public issue or an issue of public interest, unless the dispute itself was a matter of an existing public controversy or dispute. (See Commonwealth Energy Corp. v. Investor Data Exchange, Inc., supra, 110 Cal.App.4th at p. 34, 1 Cal.Rptr.3d 390; Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO, supra, 105 Cal.App.4th at p. 924, 130 Cal.Rptr.2d 81; see also Weinberg v. Feisel (2003) 110 Cal.App.4th 1122, 1134, 2 Cal.Rptr.3d 385.) Defendants do not argue that their disciplinary actions against Dr. O'Meara concerned an existing public controversy or dispute. Instead, they contend the challenged discipline was a public issue because the dispute involved managed health care, which is a matter of current interest and public debate. We agree that managed care financial arrangements and decision making are of substantial interest to citizens of this state and of the entire country. However, in determining the applicability of our state's anti-SLAPP statute, a court must focus on the "specific nature" of the challenged protected conduct, rather than "the generalities that might be abstracted from it." (Commonwealth Energy Corp. v. Investor Data Exchange, Inc., supra, 110 Cal.App.4th at p. 34, 1 Cal.Rptr.3d 390.) The specific dispute here concerned a hospital's disciplinary actions against a surgeon *416 for protesting a perceived interference with a medical decision. Although there may be a relationship between this dispute and the general topics of quality health care and managed care systems, the link is too attenuated to trigger anti-SLAPP protection. The fact that "a broad and amorphous public interest" can be connected to a specific dispute is not sufficient to meet the statutory requirements. (Weinberg v. Feisel, supra, 110 Cal.App.4th at p. 1132, 2 Cal.Rptr.3d 385; accord Commonwealth Energy Corp. v. Investor Data Exchange, Inc., supra, 110 Cal.App.4th at p. 34, 1 Cal.Rptr.3d 390.) To convert defendants' challenged disciplinary action into an issue of public interest merely because the incident can be related to a broader public health issue would improperly provide for anti-SLAPP coverage in every employment-type case involving a physician or health care worker. This could not have been the legislative intent underlying the anti-SLAPP statute.
In a related argument, defendants contend the discipline imposed was a matter of public interest because it concerned statements that Dr. O'Meara made to a patient's family, which necessarily involves the critical public health question of the quality of patient care. However, the focus here is not on the statements that Dr. O'Meara made to his patients. Instead, the applicability of the anti-SLAPP statute depends on an analysis of the defendants' alleged protected conduct. (See City of Cotati v. Cashman, supra, 29 Cal.4th 69, 76-78, 124 Cal.Rptr.2d 519, 52 P.3d 695.) In this case, defendants' conduct concerned the alleged improper discipline of an individual physician who was not otherwise the subject of a public controversy or debate. According to defendants' evidence, this discipline was imposed solely because of a concern about the manner in which Dr. O'Meara spoke with a patient's family. Without more, the manner in which an individual physician communicates with an individual patient or patient's family is not a topic of widespread public interest triggering anti-SLAPP protection.
Based on this record, defendants failed to satisfy their burden to show the applicability of section 425.16, subdivision (e)(4). Because defendants did not meet their burden to show Dr. O'Meara's complaint is subject to the anti-SLAPP statute, we do not reach the issue whether Dr. O'Meara showed a probability of prevailing on the merits. (§ 425.16, subd. (b); see Santa Monica Rent Control Bd. v. Pearl Street, LLC (2003) 109 Cal.App.4th 1308, 1318, 135 Cal.Rptr.2d 903.)

DISPOSITION
Order affirmed. Defendants to bear Dr. O'Meara's costs on appeal.
WE CONCUR: NARES, Acting P.J., and IRION, J.
NOTES
[1] All further unspecified statutory references are to the Code of Civil Procedure.
[2] Civil Code section 47, subdivision (b) reads, in pertinent part: "A privileged publication or broadcast is one made:

[¶] ... [¶]
(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure...."
[3] Another code section, Civil Code section 43.7, provides for a qualified immunity for actions taken by members of a hospital peer review committee.