[No. A016168. First Dist., Div. Two. May 13, 1986.]

RAYMOND V. CUENCA, Plaintiff and Appellant, v.
SAFEWAY SAN FRANCISCO EMPLOYEES FEDERAL CREDIT
UNION et al., Defendants and Respondents.

**COUNSEL**

James N. Sinunu, Brian E. Hawes and Popelka, Allard, McCowan & Jones for Plaintiff and Appellant.

Charles H. Brock, Scott R. Mosko and Hoge, Fenton, Jones & Appel for Defendants and Respondents.

**OPINION**

**ROUSE, J.**—Plaintiff appeals from a judgment entered for defendant after defendant's motion for summary judgment was granted. He contends the trial court erred in granting the summary judgment; we disagree and affirm.

Plaintiff Cuenca was formerly the manager of the Safeway San Francisco Employees Federal Credit Union (Credit Union). In the spring of 1973

questions about the propriety of plaintiff's conduct were brought to the attention of the governing bodies of the Credit Union. The Credit Union in question is closely regulated by federal statute. Under federal regulations it is required to have a supervisory committee which is responsible for conducting audits of the Credit Union. (12 U.S.C. § 1761d.) The supervisory committee is appointed by the board of directors and reports to it.

In the course of investigating allegations against plaintiff, the supervisory committee and its chairman, Mr. Holbrook, made various oral statements and issued a written report concerning plaintiff. This report outlined suspicions that plaintiff was receiving kickbacks on insurance policies placed through the brokerage agency of his brother, that plaintiff was spending much of his time doing outside liquidation work, keeping infrequent office hours at the Credit Union, and had made an irregular business expense claim. Some of the information in the report was the result of investigations carried out by the supervisory committee or its chairman Holbrook. Also included in the report was a partial transcript of a tape recorded conversation which Holbrook had had with an auditor, Mr. Onesta, who had recently conducted an audit of the Credit Union.

At a meeting of the board of directors on July 9, 1973, the supervisory committee distributed copies of its written report marked "ABSOLUTELY PERSONAL AND CONFIDENTIAL." Following the meeting all copies of the report were collected and locked up. At the close of the meeting the board decided to ask for plaintiff's resignation or to terminate his employment if he was unwilling to resign.

In January 1974, plaintiff brought suit for defamation based upon oral and written publications made by the Credit Union and Holbrook between June 25, 1973, and July 9, 1973. He alleged specifically that defendants had published defamatory material charging him with taking illegal kickbacks, incorrectly reporting business expenses, and keeping irregular business hours. After a jury trial plaintiff received a favorable verdict. A motion for new trial was granted May 13, 1976, on grounds that the verdict was not supported by the evidence. Plaintiff appealed granting of the motion for new trial. In an unpublished opinion this court affirmed the order for new trial. (1 Civ. No. 41064, filed Aug. 29, 1979.)

In November 1981, defendants moved for summary judgment or, in the alternative, that certain issues be specified as without substantial controversy. That motion was supported by the declaration of Holbrook, a copy of the supervisory committee report, business expenses documents, minutes of the July 9, 1973, board of directors meeting, a copy of federal credit union

bylaws and portions of a manual for supervisory committees in federal credit unions. Plaintiff's opposition to the motion for summary judgment was supported by photocopies of some 56 pages selected from almost 2,000 pages of trial transcript. On December 7, 1981, defendants' motion for summary judgment was granted. The complaint was dismissed and judgment was entered December 11, 1981.

Plaintiff moved for new trial and/or reconsideration of the motion granting summary judgment. The motion was made on the following grounds: that the order granting summary judgment improperly relied on the doctrine of the law of the case; that additional facts relating to the issue of malice had come to light since the order; that the question of absolute privilege was not properly before the court; that one of the cases relied upon by the trial court was inapposite; that defendants had failed to show the applicability of an absolute privilege or of an absence of malice. ■■■■ The motion was denied and plaintiff filed a timely notice of appeal from the judgment.[1]

## I.

Plaintiff contends that the trial court erred in granting defendants summary judgment. The trial court granted summary judgment on grounds that the report of the supervisory committee to the board of directors was absolutely privileged under Civil Code section 47, subdivisions 1 and 2, and that the report was conditionally privileged. Finally, the trial court concluded that plaintiff had failed to produce any evidence of malice which would have vitiated that conditional privilege.

■ Summary judgment granted under Code of Civil Procedure section 437c is appropriate only if the affidavits and supporting papers of the moving party would sustain a judgment in his favor and the party opposing the motion has failed to show by affidavit or supporting documents such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of material fact. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981]; *Bank of Beverly Hills* v. *Catain* (1982) 128 Cal.App.3d 28, 33-34 [180 Cal.Rptr. 67].) Where the moving party is the defendant he must either negate a necessary element of the

---

[1]Plaintiff purports to appeal from the order of December 7, 1981, granting the motion for summary judgment. An order granting a motion for summary judgment is a nonappealable preliminary order. (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 207 [137 Cal.Rptr. 118].) The order directing dismissal of the complaint and entry of the judgment issued December 9, 1981, and judgment was entered two days later. We construe plaintiff's appeal to be from the judgment.

plaintiff's case or state a complete defense. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) If any triable issue of fact does exist then it is error to have granted the motion for summary judgment. (*Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125].)

## A. *Absolute Privilege*

In ruling that summary judgment was properly granted the trial court expressly found that the report of the supervisory committee to the Credit Union's board of directors was absolutely privileged under Civil Code section 47, subdivisions 1 and 2. That section provides that "a privileged publication or broadcast is one made—[¶] 1. In the proper discharge of an official duty. [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable" by writ of mandate. ■ The privilege created by Civil Code section 47, subdivisions 1 and 2, has been construed by case law to be an absolute privilege which is in no way affected by the presence or absence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Frisk* v. *Merrihew* (1974) 42 Cal.App.3d 319, 323 [116 Cal.Rptr. 781, 85 A.L.R.3d 1128].)

■ The official duty privilege created by section 47, subdivision 1, extends to high ranking government officials. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 778 [180 Cal.Rptr. 657, 640 P.2d 793].) It has never been applied to private individuals. (*Slaughter* v. *Freidman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886].)

Unlike the narrow official duty privilege the official proceeding privilege created by section 47, subdivision 2, covers communications by nongovernmental speakers who participate in an official proceeding. Thus, private individuals who report instances of wrongdoing to official regulatory bodies are protected by the privilege. (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 32-34 [104 Cal.Rptr. 414] [letter complaining of conduct by real estate broker sent to state agency in charge of revoking brokers' licenses]; *Long* v. *Pinto* (1981) 126 Cal.App.3d 946, 948 [179 Cal.Rptr. 182] [letter critical of physician sent to Board of Medical Quality Assurance].)

Whatever doubts there may have once been about what kinds of agencies may conduct an "official proceeding authorized by law," those questions have been resolved by two California Supreme Court decisions. In *Hack-*

*enthal* v. *Weissbein* (1979) 24 Cal.3d 55 [154 Cal.Rptr. 423, 592 P.2d 1175, 9 A.L.R.4th 791], the court declined to find that hearings conducted by the judicial commission of a private medical society were official proceedings authorized by law. (*Id.*, at p. 61.) The court explicitly rejected the contention that merely because state law required the creation of a review committee, every body so created was "official." (*Id.*, at p. 59.) After discussion of the statutory scheme, the court concluded that "section 47, subdivision 2 applies exclusively to government agencies." (*Id.*, at p. 61.) This rule was reiterated in *Slaughter* v. *Friedman, supra,* 32 Cal.3d 149, 156. Between the two decisions in 1979, the Legislature added subdivision (2) to section 47, permitting extension of the absolute privilege to proceedings reviewable by mandate. (Stats. 1979, ch. 184, § 1, pp. 403-404.) ■■ ■■

■ The rule of absolute privilege, then, is that only governmental proceedings or quasi-judicial proceedings[2] otherwise reviewable by writ of mandate come within the scope of an "official proceeding authorized by law" which is covered by the absolute privilege created by section 47, subdivision 2. (See *Wallin* v. *Vienna Sausage Manufacturing Co.* (1984) 156 Cal.App.3d 1051, 1054-1055 [203 Cal.Rptr. 375].)

Here, in granting the motion for summary judgment, the trial court distinguished *Hackenthal* v. *Weissbain, supra,* 24 Cal.3d 55, from an earlier California Supreme Court decision in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410]. However, the court's apparent reliance upon *Westlake* seems to be the result of a misreading of that case. The *Westlake* decision affirmed the holding of the lower court that the section 47, subdivision 2 absolute privilege was not available to immunize the *conduct,* as distinct from the *publications,* made in revoking a physician's staff privileges. (*Id.*, at p. 482.)

---

[2]Defendants contend that this proceeding was a quasi-judicial proceeding subject to the absolute privilege of section 47, subdivision 2, under a substantial line of case authority. The traditional test for when a body is exercising quasi-judicial authority was set out by this court in *Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861. As we concluded in *Ascherman,* the power to compel witnesses and sanction with contempt are only secondary factors in determining whether or not a proceeding is quasi-judicial. Primary factors are: (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts; (2) whether the body is entitled to hold hearings and decide the issue by application of rules of law to the ascertained facts; and (3) whether the body's power affects the personal or property rights of private persons. (*Id.*, at p. 866.)

In the case before us there was nothing quasi-judicial in the activities of the supervisory committee. It investigated various complaints against plaintiff and submitted the results of its investigations to the board of directors. Neither the committee nor the board conducted a hearing nor made any formal findings of fact. As any employer's decision to fire an employee would, the outcome of the board's deliberations did impact upon plaintiff's interest in his employment. However, unless we are going to construe the firing decisions of virtually all private employers to be quasi-judicial proceedings, we find this proceeding insufficient to meet the test set out in *Ascherman.*

Reading *Westlake* and *Hackenthal* to permit the absolute privilege to a nongovernmental body in certain instances, the trial court then looked to see whether the conduct of the Credit Union, because it was so highly regulated by federal law, was an "official proceeding."

Admittedly, the structure of a federal credit union and the duties of its various corporate parts, especially the supervisory committee and the board of directors, are highly regulated by federal statute. (See 12 U.S.C. § 1751 et seq.) The National Credit Union Administration Board is charged with providing local credit unions with sample bylaws (12 U.S.C. § 1758), one set of which was apparently adopted by the Credit Union. Under federal statute the supervisory committee of a federal credit union is empowered to make annual and supplementary audits, and by unanimous vote to suspend any officer of the credit union. (12 U.S.C. § 1761d.) ■ None of these statutorily created duties, however, suffices to make the investigation by the supervisory committee or its report to the board of directors an "official proceeding." The Credit Union is not a governmental agency nor are the proceedings of its supervisory committee and board of directors reviewable by writ of mandate. Nor was the supervisory committee or defendant Holbrook acting in the capacity of a governmental official performing an "official duty." Accordingly, we conclude that the trial court erred in finding the absolute privilege of section 47, subdivisions 1 and 2, applicable.

### Conditional Privilege

Civil Code section 47, subdivision 3, provides, in pertinent part, that "A privileged publication . . . is one made [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested . . . ." ■ The conditional privilege created by section 47, subdivision 3, is lost if the privilege is abused or if the publication was motivated by malice. (*Deaile* v. *General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 847 [115 Cal.Rptr. 582].) "Interested persons" within the meaning of section 47, subdivision 3, have been defined as a communicator and a recipient with a common interest, although to be protected the communication must be one "reasonably calculated to further that interest." (*Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278, 285 [186 Cal.Rptr. 184].)

Communications made in a commercial setting relating to the conduct of an employee have been held to fall squarely within the qualified privilege for communications to interested persons. In *Deaile* v. *General Telephone Co., supra,* 40 Cal.App.3d 841, 849, it was held that an employer may publish to his employees the reasons for termination of another employee, the rationale for the publication being the employer's economic interest in

clarifying its policies and preventing future abuses of those policies. (*Ibid.*) In *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423], communications relating to dishonesty of a former employee made by an officer and a manager of a body shop to insurance adjusters who normally referred business to the shop were likewise protected by a qualified privilege, because the speakers were not only protecting their own interests, but those of the insurance adjusters who were in the habit of referring clients to the shop. (*Id.,* at pp. 751-752.)

█ In the case before us the communications upon which plaintiff based his action for defamation were all published between June 25 and July 9, 1973, and included allegations that plaintiff was receiving kickbacks, incorrectly reporting his expenses and keeping irregular office hours.[3] Plaintiff's libel claim was made on the basis of the written report submitted by the supervisory committee to the board of directors. That report bears as a heading the notation "ABSOLUTELY PERSONAL AND CONFIDENTIAL [¶] TO BOARD MEMBERS AND SUPERVISORY COMMITTEE MEMBERS." Publication of the report was limited to members of the supervisory committee for their approval and to members of the board of directors. Thus, the publication here was substantially more limited than in *Deaile* where publication was made to a group of employees. Clearly the charges contained in the written report and apparently repeated in oral statements were all directly relevant to plaintiff's fitness as manager of the Credit Union and as such were matters of direct interest to the Credit Union's supervisory committee, its auditor and its board of directors. Therefore, the trial court correctly ruled that these communications were covered by the qualified privilege provided by section 47, subdivision 3.

## II.

The final question before us is whether the trial court ruled correctly in granting a summary judgment on the basis that there was no triable issue of fact as to whether defendants acted with malice in publishing their allegations about plaintiff. If such malice was established, its existence would vitiate the qualified privilege which we find otherwise protects the alleged defamation. █ "Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff [citations], or by any cause

---

[3]Plaintiff sought to amend his complaint a second time in April 1981, to add additional unpled acts of libel and slander, but that motion was denied. Therefore, at the time the motion for summary judgment was heard in December 1981, the only defamatory conduct properly before the court was that alleged in the complaint as amended. The limited factual basis of the defamation action was noted by the trial court in granting the motion for summary judgment.

other than the desire to protect the interest for the protection of which the privilege is given." (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 797 [197 P.2d 713], quoted with approval in *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 945 [160 Cal.Rptr. 141, 603 P.2d 58].)

The malice necessary to destroy a qualified privilege is "actual malice or malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." (*Agarwal* v. *Johnson, supra,* 25 Cal.3d 932, 944.) Malice may also be established by a showing that the publisher of a defamatory statement lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights. (*Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764]; *Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 936 [119 Cal.Rptr. 82].)

In its order granting defendants summary judgment, the trial court found that there was no triable issue of fact as to the existence of malice. It based that ruling explicitly upon evidence presented in opposition to the motion which included evidence introduced at the prior trial "insofar as [that evidence was] called to the attention of this court." In support of his opposition to the motion plaintiff submitted selected portions of the trial transcript, photocopies of which he appended to his papers, but asked the court to take judicial notice of the complete reporter's transcript.

Matters which are properly subjects of permissive or mandatory judicial notice are appropriately before the court on a motion for summary judgment. (Code Civ. Proc., § 437c.) Under Evidence Code section 452, subdivision (d)(1), judicial notice "may be taken" of the records of any court of this state. Such a record from a prior proceeding may be adequate supporting documentation on a motion for summary judgment. (*California State Employees' Assn.* v. *Way* (1982) 135 Cal.App.3d 1059, 1064 [185 Cal.Rptr. 747].)

It is evident from the trial court's order that it took judicial notice of the trial transcript only to the extent that such evidence was called to its attention. In reviewing the trial court's order we are compelled to judicially notice any matters properly noticed by the trial court. (Evid. Code, § 459, subd. (a)(1).) However, we decline to take judicial notice, as plaintiff urges us to do, of the whole record of the prior trial. To do so would give plaintiff an opportunity to present evidence he elected not to bring to the attention of the trial court at the time he opposed the motion for summary judgment.[4]

---

[4]In addition to the photocopied pages of trial transcript submitted in support of the opposition to summary judgment we have looked also to those citations to the transcript provided in the memorandum of points and authorities in opposition to the motion.

■■ ■■ ■■ ■■ Turning to the evidentiary material which was before the trial court on the motion for summary judgment, we look to see if there was a triable issue of fact as to whether defendants' actions were (1) motivated by hatred, ill will or a desire to vex, annoy or injure plaintiff, or (2) undertaken without a reasonable belief in the truth of the published allegations.[5]

■■ The only citation to the record which suggests that defendants acted out of ill will or hatred of plaintiff is reference to a question directed by plaintiff's counsel to a member of the Credit Union's board of directors, Mr. Cabal: "Sir, did you observe any conduct or statement on the part of Mr. Holbrook at any time prior to July 9th, 1973, indicating any ill will or hostility toward Ray Cuenca?" Apparently, plaintiff's counsel assumes that his own questions are evidence sufficient to raise a triable issue of fact. Such is not the case.

In support of the motion for summary judgment defendant Holbrook submitted a declaration disavowing any "motive or purpose" other than proper discharge of his duty as chairman of the supervisory committee. Furthermore, he declared that he did not bear hatred or ill will towards plaintiff nor did he harbor any desire to injure plaintiff. We conclude that plaintiff failed to establish a triable issue of fact as to whether defendants acted with an improper motive.

■■ On appeal and in opposition to the summary judgment, plaintiff also claimed that defendants acted recklessly or without a reasonable belief in the truth of the alleged defamatory statements. He contends that defendant Holbrook, who prepared the report of the supervisory committee, could not reasonably have believed the allegations in the report that plaintiff was receiving "kickbacks" for Credit Union insurance policies. In support of this contention plaintiff argues that Holbrook's report claimed that he had been told by the Credit Union's auditor that plaintiff was taking kickbacks, but at trial the auditor, Mr. Onesta, denied making such a charge. In the

---

[5]In support of plaintiff's motion for reconsideration of the summary judgment he submitted two additional affidavits which he contended were relevant to the issue of malice. The first of these was an affidavit from plaintiff's successor at the Credit Union who claimed he was shown a copy of the supervisory committee report about plaintiff at some time in early 1974 by defendant Holbrook. This affidavit clearly relates, as plaintiff conceded, to a publication chronologically outside the scope of the pleadings and thus was irrelevant.

The second affidavit, submitted by plaintiff's former secretary, gave her opinion that plaintiff's hours were not atypical of "any administrator," that his outside work did not conflict with his Credit Union duties, that there were staff morale problems, and that she had never been instructed by plaintiff not to surrender the keys to his desk. Whatever the merits of this potential testimony, it is also irrelevant to the issue of malice.

conversation between Holbrook and Onesta related in the supervisory committee report Onesta conceded that while he had no evidence that plaintiff was getting kickbacks he believed that plaintiff was in some way, as yet undiscovered, benefiting from payments for placement of Credit Union insurance policies. These assertions by Onesta were consistent with his trial testimony in which he denied telling Holbrook that plaintiff was getting a kickback, but conceded that kickbacks were a subject of discussion between them.

Plaintiff likewise contends that Holbrook could not have reasonably believed plaintiff was involved in improprieties involving insurance as of July 9, 1973 (the date of the supervisory committee report) when in March 1973 the same committee had concluded that plaintiff was not "receiving anything of value from the credit union's insurance programs, and that the only financial benefit from the credit union's insurance policies has properly been to the broker."

At the outset of the July 9 report Holbrook alluded to the March report, explaining that at that time there was "insufficient documentation" of plaintiff's improper involvement in insurance matters. The July report goes on to note that new information had since become available. New allegations of plaintiff's participation in insurance improprieties had apparently been brought to the attention of the supervisory committee by three staff members of the Credit Union and through the suspicions of the auditor Onesta. Such allegations, intervening between the report in March which found plaintiff blameless and the report in July, explain Holbrook's reexamination of the issue and do not indicate that he was acting recklessly in repeating the charges.

Plaintiff also argues that the supervisory committee report was incorrect in suggesting that the policy of double interest insurance would lead to bankruptcy. Plaintiff cites to the contrary opinion of his own expert witness on insurance. This evidence serves only to create a factual conflict as to whether or not bankruptcy was likely to result from use of a given type of insurance policy, but it creates no issue as to whether or not Holbrook reasonably believed bankruptcy was a threat.

Finally, plaintiff argues that many of the statements in the supervisory committee report were not factually substantiated at trial. Once again, the issue is not the truth or falsity of the statements but whether they were made recklessly without reasonable belief in their truth. ▮▮▮▮▮ Thus, controversies over plaintiff's hours at the Credit Union and his business expense reports as reflected in plaintiff's citations to the trial transcript

do not suggest that defendants were repeating charges without a reasonable belief in their truth.[6]

Since we find that the trial court correctly concluded that the qualified privilege of Civil Code section 47, subdivision 3, applied to the alleged defamation, and correctly determined that there was no triable issue of fact as to the existence of malice which would vitiate that privilege, we affirm the judgment.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

---

[6]Plaintiff makes one final contention on appeal, namely, that in its order granting the motion for summary judgment the trial court inappropriately applied the doctrine of the law of the case.

The text of the reference is revealing. The court noted that a trial of the matter had been had and a motion for new trial had been granted. Then the court stated, "The order granting the new trial was affirmed on appeal in an unpublished decision August 29, 1979, copy attached, which clearly states the case. That opinion is now the law of this case." The court then went on to render its own decision as to the legal and factual issues before it without reference to the earlier decision.

On the initial appeal the only issues before the appellate court were whether in granting the motion for new trial the court gave an inadequate statement of reasons and whether the court misstated the test for actual malice. The opinion found both contentions to be without merit.

Here the trial court's statement that the earlier appellate opinion was the law of the case was correct if unnecessary. However, we find that, contrary to plaintiff's contention, the trial court did not *rely* upon the doctrine of the law of the case in granting the motion for summary judgment. Plaintiff has not demonstrated that he suffered any prejudice from what was clearly a factually correct, if procedurally unnecessary, statement.