Filed 9/22/15  Rojas v. United Parcel Service CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RAYMOND JOHN JOSEPH ROJAS, | D068070 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVRS1203243) |
| UNITED PARCEL SERVICE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Joseph R. Brisco, Judge.  Affirmed.

Lavi & Ebrahimian, N. Nick Ebrahimian, Joseph Lavi and Jordan D. Bello for Plaintiff and Appellant.

Paul Hastings, George W. Abele and Ji Hae Kim for Defendants and Respondents United Parcel Service, Inc. and Nicholas Barron.

Raymond Rojas appeals a grant of summary judgment in his defamation action against defendants United Parcel Service (UPS) and Nicholas Barron based on a finding

that the statements on which he based his claim were either absolutely or conditionally privileged. Rojas contends there are triable issues of fact as to the truthfulness of the statements and whether defendants made them with malice sufficient to overcome summary judgment. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

UPS employed Rojas from September 26, 2005, through April 26, 2011. A collective bargaining agreement (CBA) between UPS and Rojas's union governed Rojas's employment. The CBA specified the procedures for discipline and discharge, and identified certain transgressions, including "willful, wanton or malicious damage to the Employer's property," that would result in immediate termination.

On April 26, 2011, Barron, a security specialist for UPS, discovered that a UPS covert video camera had been disabled and damaged. That day, Barron and his supervisor Chris Brunton undertook an investigation to determine the cause of the damage. Security footage taken on April 8, 2011, showed Rojas and two other UPS employees, Omar Villela and Eric Ramos, on the video feed. While Villela and Ramos looked toward the camera, Rojas moved outside its viewing field. Shortly afterwards, the footage turned black. Barron informed Brunton and the manager, Brian Lorton, of what he had found. In keeping with company policy, Barron and Brunton also informed Labor Manager Kimberly Ades and Hub Division Manager Troy Emerson because of their managerial responsibilities at UPS.

2

As part of their investigation, Barron and Brunton interviewed Rojas and told him that the security video showed him pulling the wire harness and damaging the camera. After denying responsibility, Rojas admitted to Barron and Brunton that he had poked and touched the security camera and had been "snooping around," but claimed he never damaged it. Nevertheless, Rojas offered to pay UPS for the damage.

Barron and Brunton also interviewed Villela and Ramos. Villela said Rojas did not intend to damage the camera and Ramos indicated that Rojas did not pull the wires or damage the camera. Later, Barron found evidence that Villela had also pulled on the wiring harness, but did not change his opinion that Rojas was solely responsible for the destruction of the camera.

After completing the investigation, Barron offered Rojas the opportunity to resign to avoid being terminated and reported to the police for vandalism. Rojas refused to resign. Thereafter, Barron, Brunton and Lorton recommended to Ades that the company terminate Rojas. Believing that Rojas had committed "willful, wanton, or malicious damage" to company property in violation of the CBA, Emerson and Ades decided to terminate him.

After the termination, Rojas filed a grievance with his union. In response, Barron provided his investigative report to members of UPS's management. UPS and the union held a hearing regarding Rojas's termination. During the hearing, Rojas admitted he touched, poked and yanked the camera, had "no business" being there, and was "snooping around," [but continued to assert that he did not damage anything].

3

Later, at a second level grievance hearing Rojas requested, Barron testified to a panel of UPS employees and union members that Rojas intentionally and maliciously damaged the camera. Based on the evidence presented, the panel upheld UPS's decision to terminate Rojas.

In the meantime, pursuant to UPS policy and in the normal course of his duties, Barron reported to the City of Ontario Police Department that Rojas had vandalized UPS property. The police report stated that Rojas "was caught on video pulling wire harness from back of camera"; it was unclear from the report whether this was a quote from Barron or a police summary of what he told them.

Rojas ultimately filed this case against UPS and Barron, asserting claims for wage and hour violations, wrongful termination, retaliation and defamation.[1] Rojas's defamation claim rested on a single assertion that Barron falsely reported Rojas "willfully and maliciously destroyed UPS's property."

UPS moved for summary judgment, arguing that its statements about Rojas were privileged communications or true statements of fact or opinion and were thus not actionable. In his opposition, Rojas disputed the propriety of summary judgment, but failed to respond to UPS's separate statement of undisputed material facts.

---

[1] The only claim at issue on this appeal is the one for defamation and thus this opinion does not include any discussion as to Rojas's remaining claims.

The court granted the motion for summary judgment, finding that UPS's allegedly defamatory statements were absolutely privileged communications, or true statements or statements of opinion, made in good faith to others with a shared interest or duty that were subject to a qualified privilege.

## DISCUSSION

Summary judgment is appropriate if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[2] A defendant who moves for summary judgment or summary adjudication bears the initial burden to show that the cause of action has no merit--that is "that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (§ 437c, subds. (a) & (p)(2).)

If the defendant carries that burden, "the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A triable issue of material fact exists " 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and

___

2 All statutory references are to the Code of Civil Procedure except where otherwise noted.

conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." *Guz. v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334. "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

*Separate Statement*

We note that Rojas failed to respond to UPS's separate statement of undisputed facts and did not dispute the accuracy of the facts detailed in it. UPS asks us to affirm the judgment based solely on Rojas's failure to file a responsive separate statement. (See *Batarse v. Service Employees International Union, Local 1000* (2012) 209 Cal.App.4th 820, 828 [recognizing that a trial court faced with the absence of a separate statement from a party opposing summary judgment may grant summary judgment on that basis].) However, despite Rojas's procedural noncompliance, the trial court considered the merits of his arguments and determined that there was no triable

issue of material fact. Under the circumstances, we exercise our discretion to consider the merits of the case.[3] (See *Kulesa v. Castleberry* (1996) 47 Cal.App.4th 103, 112.)

*Analysis*

A. Defamation

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720 (*Taus*).) Rojas contends that Barron's statements to the Ontario Police, the administrative grievance panel, and UPS employees were defamatory, while UPS argues that those statements were privileged and thus not actionable.

1. The Absolute Privilege

Civil Code section 47, subdivision (b), provides an absolute privilege for communications made " . . . in any . . . official proceeding authorized by law." This privilege is intended to allow the " ' "utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing" ' "and cannot be defeated by a showing of falsity or malice. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 364 (*Hagberg*).) Civil Code section 47, subdivision (b), also creates an absolute privilege for statements made "in the initiation or course of any other proceeding" that is authorized by law and reviewable by petition for

---

3    In doing so, we nonetheless recognize that the detailed facts set forth in UPS's separate statement are undisputed.

writ of mandate. (*Hagberg, supra*, at p. 360.) This privilege applies to statements made in employment grievance proceedings that are subject to mandamus review. (*Wallin v. Vienna Sausage Manufacturing Co.* (1984) 156 Cal.App.3d 1051, 1053 (*Wallin*) [noting that grievance proceedings resulting in an employee's loss of employment are subject to review by mandate].)

Rojas contends Barron falsely told police that he had video footage of Rojas pulling the camera's wire harness and intentionally damaging the camera.[4] However, an absolute privilege applies to an employer's statements to the police concerning an employee's perceived misconduct. (*Williams v. Taylor* 129 Cal.App.3d, 745, 753-754.) After viewing the video and interviewing Rojas and the other two witnesses, Barron concluded Rojas intentionally damaged UPS's property and had a reasonable basis to report Rojas to the police. Even if the report to the police was false, the absolute privilege applies. (*Hagberg, supra*, 32 Cal.4th at pp. 364, 376)

Rojas also contends Barron's statements before the grievance panel were defamatory. However, Rojas had requested the grievance proceeding to determine the propriety of his termination and Barron was called to testify about his investigation of the incident on which the termination was based. Regardless of the truthfulness of Barron's

---

[4] Although this is one interpretation of the evidence, another reasonable interpretation is that Barron did not make this statement to the Ontario Police, but that the officer who wrote the report misinterpreted Barron's statement. Regardless, whatever Barron reported to the police was absolutely privileged. In addition, based on the totality of the evidence, including Rojas's admissions, Barron reasonably concluded that Rojas damaged the security camera.

8

statements made at the grievance proceedings, they are absolutely privileged under Civil Code section 47. (See *Wallin, supra*, 156 Cal.App.3d at p. 1056 [statements made during a grievance hearing under a collective bargaining agreement are absolutely privileged].)

Thus, even if made with malice, Barron's statements to the grievance panel and to the police are privileged and thus cannot support Rojas's defamation claim.

2. The Common Interest Privilege

Civil Code section 47, subdivision (c), provides a privilege for "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." This provision "extends a conditional privilege against defamation to statements made without malice on subjects of mutual interest[]. [Citations.] This privilege is 'recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest.' [Citation.] The 'interest' must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business, or similar relationship or the defendant is protecting his own pecuniary interest. [Citation.] Rather, it is restricted to 'proprietary or narrow private interests.' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287.*)

The common interest privilege "has been determined to apply to statements by management and coworkers to other coworkers explaining why an employer disciplined

9

an employee." (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1538 (*McGrory*) [recognizing that Civ. Code, § 47, subd. (c) is consistently applied in the employment context]; *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 369 [applying the conditional privilege to a manager's complaint to department of human resources about workplace harassment]; *Cuenca v. Safeway San Francisco Employees Federal Credit Union* (1986) 180 Cal.App.3d 985, 990 (*Cuenca*).)  " 'Clearly, an employer is privileged in pursuing its own economic interests and that of its employees to ascertain whether an employee has breached his responsibilities of employment and if so, to communicate, in good faith, that fact to others within its employ so that (1) appropriate action may be taken against the employee; (2) the danger of such breaches occurring in the future may be minimized; and (3) present employees may not develop misconceptions that affect their employment with respect to certain conduct that was undertaken in the past.' "  (*McGrory*, at p. 1538*.*)

The qualified privilege will not apply, however, where the plaintiff establishes the communication at issue was made with actual malice, i.e., where the speaker had " ' "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." ' "  (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 914*;* see *Taus, supra*, 40 Cal.4th at p. 721*; Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 723, fn. 7.)  Malice may also be established by a showing that the speaker lacked reasonable grounds to believe in the truth of his statements and thus acted in reckless disregard of the plaintiff's rights. (*Taus,* at p. 721.)

10

Whether the privilege arises is ordinarily a question of law. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 108.) A defendant has the initial burden of showing that allegedly defamatory statements were made on a privileged occasion, which if shown shifts the burden to the plaintiff to establish the defendant made the statements with malice. (*Taus, supra*, 40 Cal.4th at p.721.)

Here, Rojas implicitly concedes that, but for malice, the allegedly defamatory statements were conditionally privileged[5] and focuses solely on whether the statements were made with malice. He recognizes that malice is established by a showing that the maker of a defamatory statement had no reasonable grounds to support a good faith belief in the truthfulness of the statement but erroneously contends that a conflict in the evidence as to the defendant's belief of the truthfulness of the published statements is sufficient to avoid summary judgment.

In support of this flawed argument, Rojas cites the evidence that he did not damage the security camera, including his statements and those of Villela and Ramos. However, this evidence does not negate the existence of a good faith belief by Barron that Rojas damaged the camera.[6] Rojas's nearness to the camera at the time it stopped

[5] On appeal Rojas does not contend that defamatory statements were made other than to police, at grievance hearings, and to UPS employees.

[6] Were Rojas's argument correct, any dispute of investigative findings of employee misconduct in a case like this would automatically establish malice and negate the common interest privilege.

11

functioning, his admission that at that time he was "snooping around" and tugging on the camera's wires and his offer to pay for the damage are sufficient to support a good faith belief that Rojas was responsible, thus eliminating his claim of malice. (*Cuenca, supra*, 180 Cal.App.3d at p. 999 [holding that even in the face of conflicting evidence, the existence of a reasonable belief defeats the contention of malice on a motion for summary judgment]; *McGrory, supra*, 212 Cal.App.4th at p. 1541 [concluding that if no evidence gives rise to a reasonable inference that declarant did not believe his statement or that his belief was unreasonable, the statement is conditionally privileged].)

Even if the evidence did not establish that Barron had a good faith belief in the truth of his statements, malice is not shown by the fact that he could have done a better job investigating the accusations against Rojas. (*Bierbower v. FHP, Inc.* (1999) 70 Cal.App.4th 1, 9 ["maliciousness cannot be derived from negligence. Malice entails more than sloppiness . . . ."]; *Reader's Digest Ass'n v. Superior Court* (1984) 37 Cal.3d 244, 258 ["The failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy."].) Further, as part of his responsibilities at UPS, Barron was required to report to company management all accusations of serious employee misconduct before completion of the entire investigation.

Rojas also asserts Barron lied to him and treated him as if he had done something wrong. He contends that Barron's knowledge of his involvement in an earlier stolen phone incident colored Barron's view of him and established a triable issue of fact as to

12

whether Barron acted with malice. However, this is mere speculation and does not suffice to avoid summary judgment. (See *Burton v. Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 978.)

Rojas also claims Barron's threats to report him to the police if he did not resign and subsequent report to management establish Barron's ill will toward him.[7] However, Rojas does not provide evidence showing Barron violated any company policy by reporting his misconduct to UPS's management or to the police. In fact Rojas admitted in his points and authorities in opposition to summary judgment that Barron acted in conformity with UPS policy, which required the district manager and the security department to report such matters to the police in an effort to gain restitution. In any event, any resentment Barron had towards Rojas would not constitute malice because Barron's statements had a common interest in furthering UPS's company policy.

_____

[7]     Rojas cites *Larrick v. Gilloon* (1959) 176 Cal.App.2d 408 (*Larrick*), disapproved of on another ground in *Field Research Corp. v. Superior Court* (1969) 71 Cal.2d 110, 114, fn. 4, for the proposition that anything ever said or done against him is evidence of malice. However *Larrick* is factually distinguishable. There, the plaintiffs established malice by a plethora of evidence, including the defendant's publication of written articles threatening them with grand jury action for conspiracies, collusion, fraud and dishonesty while in public office, as well as a long record of "controversy and many disagreements" between the adverse parties. In one newspaper article, defendant accused the officials of exhibiting "stupidity, incompetence, favoritism of the grossest sort, vindictiveness, bad faith, collusion, falsification of minutes and lack of integrity." (*Id*. at p. 363.) This strong evidence of malice based on many accusatory and vitriolic statements stemming from a long standing grudge sharply contrasts with Rojas's speculation that because Barron recognized him from a prior investigation, Barron was biased against him, even though Barron never articulated such thoughts. Also in this case there was no evidence of a history of animosity between the men.

(See Rest.2d, Torts, § 603, com. a, p. 292 ["[I]f the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation as the supposed misconduct of the person defamed does not constitute an abuse of the privilege."].)

Because Rojas has conceded that the common interest privilege applies but for malice and the evidence was not sufficient to establish malice, the trial court correctly granted summary judgment in defendants' favor.

DISPOSITION

The judgment is affirmed.  Defendants are to recover their costs of appeal.


Prager, J.*

WE CONCUR:


BENKE, Acting P. J.


NARES, J.

_____

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14