Filed 4/17/23  Salas v. Smart & Final Stores CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANNY SALAS, | B314023 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC724445 |
| v. | |
| SMART & FINAL STORES, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Marie Scheper, Judge.  Reversed in part and affirmed in part.

Olivo & Associates and Eduardo Olivo for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack Sholkoff, Spencer C. Skeen, and Jennifer P. Suberlak for Defendants and Respondents.

————————————

Danny Salas sued Smart & Final for retaliation, disability discrimination and harassment, and defamation. The trial court granted Smart & Final's motion for summary judgment. Salas presented evidence of incoherence and contradictions in Smart & Final's explanation for firing him. He also presented evidence Smart & Final's management was hostile to his safety complaints and his use of family leave. Summary judgment was inappropriate and we reverse. We affirm an order denying Salas's request to compel discovery.

I

We summarize Salas's version of the facts.

Salas drove trucks for the grocery chain Smart & Final for more than two decades. Smart & Final gave him several "Safe Driver Awards."

Smart & Final fired Salas in March 2018. Salas asserts it was because he reported recurring safety issues and exercised his right to take leave to care for his disabled mother.

We identify actors and roles. James Moore and Victor Diaz were Salas's direct supervisors. Forrest Carlyle and Dallas Kelley were managers. Supervisors report to managers. Mark Witt was the vice president of logistics. Witt reported to Tom Paolucci, who was the group vice president of the supply chain. Aishia Flynn was a human resources manager.

Carlyle, Kelley, Witt, and Flynn conducted the investigation leading to Salas's termination. Carlyle and Witt played major roles. Carlyle examined Salas's driver logs and shared his findings. Witt said he was involved in the investigation and made the recommendation on discipline.

Salas internally appealed the termination decision. Paolucci and two other people were part of the appeal committee.

Salas had a "leadership role in reporting recurring safety issues and other operational problems" to Smart & Final's management. He often identified safety issues, including trailers that exceeded legal weight limits. He demanded safety issues be fixed before he would start deliveries. Smart & Final had a bonus program for management that depended, in part, on achieving targets for cost savings, timely deliveries, and maximized use of trailer space.

Witt started his vice president role in about 2015. He attended meetings the drivers held. "After a few meetings, [Witt] began to express his obvious displeasure whenever [Salas] would report the safety issues that the drivers were concerned about." When Salas reported safety issues, Witt rolled his eyes, sighed loudly, shook his head, and said things like, "here we go again!", "not more of this bs" and "we're going to keep 'cubing them out.'" The last statement is about loading trailers to maximum capacity.

Supervisor Moore called Salas to his desk 20 to 25 times between 2015 and 2017, when Moore went on leave, to review Salas's daily driving logs. Moore sometimes asked Salas why he was in the yard so long. Salas explained it was because he had an overweight load or a repair.

In late 2015, Salas told supervisor Victor Diaz that Moore was targeting him for reporting safety issues and overweight loads. Diaz said he would report this and other issues to superiors. No one followed up.

Throughout 2017, Salas also complained to manager Kelley that he was being harassed for complaining about recurring safety issues and overweight loads.

For at least five years leading up to his termination, Salas reported safety issues to management, including managers Carlyle

3

and Kelley.  The safety issues included the poor condition of trailers and of equipment drivers used to load and unload the trailers.  Salas knew other employees had been injured using broken equipment.

In 2017, Smart & Final started using a new program to record drivers' activities called "Descartes."  Salas complained to Victor Diaz, Carlyle, Kelley, and Paolucci that the Descartes system was defective.  Salas complained that the system incorrectly logged meal and rest times, inaccurately recorded drivers' duty status, switched drivers into "driving" status when they were idle and vice versa, incorrectly registered locations, had inaccurate GPS readings, failed to register stops, registered stops that did not occur, and incorrectly recorded driving time and mileage.  These issues continued until Smart & Final suspended Salas.  Management told Salas and other drivers to certify their logs even if they were inaccurate.

In December 2017, Salas told Carlyle he was upset about the malfunctioning Descartes system and no one was listening to his complaints.  Carlyle responded that Salas complained too much and told him "don't get your panties in a bunch."

On February 13, 2018, Salas reported an overweight load and was waiting for it to be corrected.  Carlyle asked him why he was delayed and Salas said it was because of an overweight load.  Carlyle asked Salas how many times he had reported overweight loads in the past week and in the week before that.  Salas said he did not know.  Carlyle left and then returned to question Salas, who was still waiting for the overweight to be fixed.  Carlyle left again and eventually returned and said, "it's ready, now leave!"

4

Turning to the family leave issues, beginning in 2006, Salas took intermittent leave under the Family Medical Leave Act to care for his disabled mother.

In 2008, Smart & Final asserted Salas did not give complete documentation for days on which he had taken approved leave. This assertion was false, but Smart & Final threatened to fire him for this reason.

When Salas called in to say he needed to take leave, dispatchers and a transportation operations manager would say things like, "fuck, you and your FMLA," "here we go again!" and "this is bullshit!" Many times, they would hang up while Salas was talking.

In 2014, Paolucci said a small number of employees, including those who took family leave like Salas, were affecting the company's ability to compete.

Salas complained to Victor Diaz in late 2015 that Salas was targeted for taking family leave. Salas said he had been told he was at the top of a "hit-list" because he took family leave. Diaz said he would report this to superiors. No one followed up with Salas.

In early 2017, Moore called Salas into the office and said, "They don't like FMLA. HR does not like FMLA. I'm just warning you. . . . Management and HR do not care much about FMLA." Moore told Salas that management had a list of drivers, and Salas was "at the top of the list."

Throughout 2017, Salas also complained to Kelley about being harassed for taking family leave.

Smart & Final says it fired Salas because he falsified driver logs and violated protocols for taking rest breaks due to fatigue.

According to Smart & Final, everything started with a voicemail. On Sunday, January 21, 2018, someone left human resources manager Flynn an anonymous voicemail about Salas. The caller said Salas was at a Home Depot in Pomona loading products into a Smart & Final truck on the Tuesday before that, January 16, 2018. Flynn forwarded the voicemail to Carlyle and emailed him about this. Carlyle said the voicemail disappeared following a power outage after Smart & Final fired Salas. Carlyle did not play the voicemail for Salas or others.

Carlyle did not find evidence that Salas was unloading product at Home Depot on January 16, 2018. He did look at Salas's driving log for that day and found an issue with Salas's stops. Carlyle said the log showed that Salas stopped near the Home Depot for about a half-hour in one place and one hour in another place. The log showed his status as "Driving" during that time, but his odometer reading showed a change of about two miles.

Carlyle asked a representative from Descartes, Jozef Casar, about the logs. Casar explained, "By the regulation after 5 min[utes] of not moving, even if the truck is idling (what happened in this case), the system has asked the driver if he wants to go On Duty or he wants to stay in Driving." Unless the driver selects "Driving" within one minute, "the regulation is demanding," so "the system must automatically put the driver into the On Duty status." Casar reasoned that Salas must have selected "Driving" when the prompt came up after five minutes of idling, otherwise his status would have automatically changed to "On Duty."

Carlyle forwarded information from Casar to Flynn and Witt and said it meant Salas changed his status to driving when he was stopped.

Carlyle said he reviewed between 250 and 300 logs from other drivers. He did not find similar occurrences in which trucks were in "Driving" status for an extended time without mileage changes in the odometer readings. Carlyle researched "multiple random drivers." He did not note the names of these drivers or the dates. He did not record information about the search.

Flynn and another Smart & Final employee interviewed Salas on February 22, 2018 about January 16, 2018.

According to Salas, Flynn told him not to leave until he wrote a statement, and manager Victor Diaz warned him in Spanish that Smart & Final would fire him if he did not write one. Salas wrote a statement explaining that he did not recall exactly what happened on January 16, but sometimes he takes rest breaks and it was possible he touched the screen unintentionally during a break. He noted that the week before, he accidentally touched the screen and made himself go "Off Duty." When he was driving on a highway, the truck had also gone from "On Duty" to "Off Duty" while in motion.

Smart & Final took Salas's statements about taking rest breaks to mean Salas admitted to taking unauthorized fatigue breaks. Smart & Final requires drivers to report to dispatch if they take a fatigue break, meaning a break outside of their allotted meal and rest time. Smart & Final said this was another reason to fire Salas.

Smart & Final suspended Salas on February 22, 2018, and terminated him on March 6, 2018.

A week after Smart & Final terminated Salas, Carlyle approached one of Salas's former coworkers, smiled, said "where's your buddy now? Huh?" and punched the coworker's arm.

7

A three-person committee decided Salas's internal appeal. The members were Paolucci, Kim Cook, who is the general manager of transportation, and Ginny Diaz, who is the vice president of associate relations. After reviewing Salas's file and hearing a statement from him, the committee upheld the termination.

Salas sued for alleged whistleblower retaliation for making safety complaints (Lab. Code, § 1102.5) (first cause of action); wrongful termination in violation of public policy for using family leave and for making safety complaints (second cause of action); disability discrimination for using family leave (Gov. Code, §§ 12940, subd. (a) & 12926, subd. (o)) (third cause of action); disability harassment for using family leave (Gov. Code, § 12940, subd. (j)) (fourth cause of action); retaliation and discrimination for requesting a disability accommodation to care for his mother (Gov. Code, § 12940, subd. (m)) (fifth cause of action); and defamation or coerced self-defamation (sixth cause of action).

Smart & Final moved for summary judgment. The trial court granted the motion.

## II

## A

We review an order granting summary judgment under the familiar standard. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 850–851, 860.)

The governing law for Salas's second, third, and fifth causes of action is a three-part burden-shifting test. (See *Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) First, the plaintiff must establish a prima facie case raising a presumption of discrimination. Second, the employer may rebut the presumption by showing it acted for legitimate and nondiscriminatory reasons.

8

Finally, the plaintiff may attack the employer's reasons as pretextual or may offer other evidence of improper motives. (*Id.* at pp. 354–356.)

The trial court ruled that Smart & Final offered legitimate reasons for its actions and Salas failed to show pretext or improper motives.

Salas met his burden by showing pretext and improper motive. We evaluate the totality of his evidence of pretext. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541.) Salas presented evidence of incoherence and contradictions in Smart & Final's explanation for firing him. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 75.) He also presented evidence that Smart & Final's management was hostile toward his safety complaints and his use of family leave. Viewed together, the evidence created a reasonable inference of discrimination.

Smart & Final's investigation had oddities beginning with the voicemail. An anonymous Sunday voicemail about a person's alleged conduct from five days earlier is unusual, as is loss of that voicemail due to a power outage.

Smart & Final produced two nearly identical emails in which Flynn told Carlyle about the voicemail. Flynn sent one email on Sunday, January 21, 2018, at 8:00 p.m. It ends with, "There was no caller ID so there is no record of the number the call came from. Let's discuss when I am back in the office on Tuesday." Flynn sent a second email on Monday, January 22, 2018, at 3:59 a.m. It ends with, "There was no caller ID so there is no record of the number the call came from. I am assuming the caller was" The sentence ends there. The double emails and the unfinished sentence are peculiar. Smart & Final offers no explanations.

9

The evidence about when Smart & Final began investigating Salas was inconsistent. The voicemail was from January 21. Carlyle said he started the investigation on January 22. But Smart & Final produced a tranche of Salas's logs with a print date of January 18, three days before the voicemail. Carlyle denied printing these logs. Who did? Smart & Final does not say. In early January, also before the start of the investigation, Salas's former coworker saw Carlyle and a dispatcher reviewing Salas's driving logs on a computer.

There may be innocuous explanations for all of this, but, making inferences in favor of Salas, this evidence undermines the foundation of Smart & Final's investigation.

Salas's evidence about his personal experience with Descartes tends to show the logs were an unreliable basis for termination. He complained to Carlyle and Paolucci the Descartes system was defective. He identified issues related to this case, including that the system inaccurately recorded drivers' duty status, location, GPS information, driving time, and mileage, and it registered stops that did not occur.

Smart & Final's theory of how Salas falsified his log is questionable. Carlyle based his conclusion that Salas falsified his log in part on information from Casar, who said that, pursuant to a demanding regulation, the system gives a prompt after five minutes of no movement in "Driving" status. Unless the driver presses a button within one minute of the prompt, the system defaults to "On Duty." If that is correct and Smart & Final is right that Salas made the lengthy stops, it seems Salas would have had to select "Driving" once every five minutes, about 15 total times during the alleged stops. That sounds like a poor way to steal

company time.  Despite its computerized system, Smart & Final offered no evidence Salas made these multiple inputs.

These issues with the Descartes system and with the theory of Salas's falsification undermine Smart & Final's explanation for his termination.  (See *Guz*, *supra*, 24 Cal.4th at p. 361 [proof the employer's proffered reasons are unworthy of credence may considerably assist a circumstantial case of discrimination, because this suggests the employer had cause to hide its true reasons].)

Aside from issues with the investigation, Salas presented evidence that management opposed his use of family leave and his safety complaints, which created an inference Smart & Final fired him for these reasons.

Two people involved in firing Salas were openly hostile to his safety complaints.  Witt called Salas's safety concerns "bs" and said Smart & Final would keep filling out their trailers despite his complaints.  The month before Carlyle purportedly began his investigation, Carlyle told Salas he complained too much and told him not to "get your panties in a bunch" about Descartes issues.  On February 13, 2018, Carlyle questioned Salas for reporting an overweight load and for waiting for it to be corrected.  Carlyle later expressed pleasure about Salas being fired and gloated to Salas's former co-worker.

Salas also presented evidence of Smart & Final's displeasure about his family leave.  In 2008, Smart & Final threatened to fire him based on what was a *false* accusation that his documentation about his family leave was incomplete.  Smart & Final did not dispute any of this.  More recently, when Salas requested leave, dispatchers and a transportation operations manager regularly said things like, "fuck, you and your FMLA," "here we go again!"

and "this is bullshit!" Paolucci said employees who took family leave were affecting the company's ability to compete. Moore told Salas that human resources and management did not like family leave and Salas was at the top of a management "list" for using it.

Salas presents rational inferences that Smart & Final terminated him not for its stated reasons, but because of his safety complaints, his use of family leave, or both. His evidence that Smart & Final's stated reasons were untrue, his long-term employment for which he received safety awards, and management's statements of hostility toward his safety reports and use of family leave raise a triable issue of material fact. Summary judgment therefore was improper for the second, third, and fifth causes of action.

As to the fourth cause of action, Salas's harassment claim, the same evidence about Smart & Final's reactions to Salas taking family leave creates triable issues.

An intervening California Supreme Court case affects the first cause of action, the Labor Code section 1102.5 whistleblower retaliation claim. Smart & Final's moving papers and the trial court's ruling applied the three-part burden-shifting test to this claim. In *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718, the court held that Labor Code section 1102.6, not the three-part burden-shifting test, applies to Labor Code section 1102.5 claims. The proper test requires the plaintiff to establish by a preponderance of the evidence that retaliation for protected activities was a *contributing factor* in a contested employment action. (*Lawson*, at p. 718.) Then, the employer has the burden to prove by clear and convincing evidence that it would have taken the action for legitimate, independent reasons, even without the plaintiff's protected activity. (*Ibid.*)

12

We follow *Scheer v. Regents of the University of California* (2022) 76 Cal.App.5th 904 at pages 914–915 and hold that because its moving papers did not employ the applicable framework under the Labor Code, Smart & Final failed to meet its initial burden on the first cause of action. The court should have denied Smart & Final's motion as to this cause of action. Smart & Final is not precluded on remand from moving for summary adjudication on the first cause of action under the proper framework. (*Id.* at p. 915.)

As to defamation, the sixth cause of action, Salas again raised a triable issue, and again for the same reasons. Civil Code, section 47, subdivision (c) provides a conditional privilege against defamatory statements made without malice on subjects of mutual interest. This language applies to employers' statements about employees' conduct. (*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 995–996.) Salas therefore had to show malice to prevail on this claim. (*Id.* at pp. 996–997.) "Evidence that an employer offered a pretextual explanation to justify its wrongful termination may support a finding of malice or oppression." (*Rubio v. CIA Wheel Group* (2021) 63 Cal.App.5th 82, 98–99 [analyzing malice for punitive damages award]; see *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1214 [a malice finding for punitive damages is sufficient to establish malice under section 47, subd. (c)].) Salas's evidence of Smart & Final's pretextual explanation for firing him creates a triable issue for his defamation claim.

Salas challenges several evidentiary rulings. Because we reverse summary judgment on the evidence the court admitted, we do not address these evidentiary issues.

B

Salas contests the court's denial of his motion to compel discovery, but the request was untimely. On October 16, 2019, Salas served an amended notice of deposition on a Smart & Final employee. The notice included 28 requests to produce documents. The deadline for fact discovery was November 2, 2019. The employee sat for the deposition on November 1, 2019. The reporter service submitted the completed original transcript of the deposition to Salas on December 12, 2019. Salas moved to compel discovery related to the notice for deposition on March 6, 2020. The court denied the motion as untimely and on the merits on July 17, 2020.

The court's ruling was proper. If a deponent does not produce a document that the deposition notice specified, the party seeking discovery may move the court to compel that production. (Code Civ. Proc., § 2025.480, subd. (a).) The party must make the motion "no later than 60 days after the completion of the record of the deposition." (*Id.*, subd. (b).) The court's ruling was correct because Salas's request was beyond the 60-day deadline.

**DISPOSITION**

The summary judgment is reversed. The July 17, 2020, order denying Salas's motion to compel discovery is affirmed. We award costs to Danny Salas.

WILEY, J.

We concur:

STRATTON, P. J.


VIRAMONTES, J.

14